IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBELLA MUTAL INSURANCE COMPANY, as Subrogee of BUCKINGHAM BUS COMPANY, Plaintiff<br><br>v.<br><br>MOTOR COACH INDUSTRIES and ESPAR HEATER SYSTEMS, Defendant | CIVIL ACTION NO. 05-10955-PBS |

## MEMORANDUM IN SUPPORT OF MOTOR COACH INDUSTRIES, INC.'S MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6)

Defendant Motor Coach Industries, Inc. ("MCI"), incorrectly named as Motor Coach Industries, through its attorney, David A. Barry, Sugarman, Rogers, Barshak & Cohen, P.C., submits this Memorandum in Support of its Motion to Dismiss Count I and II of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Introduction

In its complaint, Plaintiff attempts to assert causes of action against MCI for negligence and breach of express and implied warranties as a result of a fire that occurred on a coach sold to Plaintiff's subrogee by MCI on April 17, 1998. Plaintiff's claim for negligence must be dismissed as it is barred by the economic loss doctrine as the damages sought by Plaintiff are for economic loss and damage to the product itself. Likewise, Plaintiff's claim for breach of express and implied warranties must be dismissed as the statute of limitations for such claims expired several years prior to the filing of this action and such warranties were specifically disclaimed by MCI in the Purchase Agreement.

Plaintiff, Arbella Mutual Insurance Company, is the insurer of Buckingham Bus Company. Comp. ¶ 2. On April 17, 1998, Buckingham Bus Company entered into a Purchase Agreement to purchase a 1999 Model 103EL3 motor coach, VIN number 1M8TRMPAXXPO60444, (referred to hereafter as the "Coach") from MCI. Nalepka Affidavit, ¶ 4, attached as Exhibit A. Buckingham Bus Company took delivery of the Coach on September 4, 1998. Nalepka Affidavit, ¶ 7, attached as Exhibit A. Plaintiff alleges that on or about November 12, 2002, the Coach caught fire resulting in damage to the Coach only. Compl., ¶ 11. As a result of the Coach fire, Plaintiff paid "expenditures" pursuant to its policy of insurance with Buckingham Bus Company. Compl., ¶ 11.

As a result of the Coach fire and Plaintiff's "expenditures," Plaintiff purports to state two causes of action against MCI: negligence "in the design, manufacture and/or providing of instruction materials" for the Coach (Compl., Count I, ¶ 10) and breach of express and implied warranties that the Coach was merchantable and suitable for its intended purpose. (Compl., Count II, ¶¶ 15-16). However, as shown in detail below, Counts I and II must be dismissed.

I.   **Plaintiff's Claim For Negligence In Count I Is Barred By The Economic Loss Rule.**

The economic loss doctrine provides that purely economic losses are not recoverable in negligence in the absence of personal injury or damage to property other than the product itself. See Cooperative Power Association v. Westinghouse Electric Corporation, 493 N.W.2d 661, 665-666 (N.D. 1992)[1]; Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 89 (D. Mass. 1998). A manufacturer of a product sold in a commercial transaction may not be held liable in

---

[1] The Purchase Agreement provides "[t]his Agreement to Purchase shall be construed and interpreted in accordance with the laws of the State of North Dakota, United States of America." See § 14 of The Purchase Agreement attached as Exhibit A to the Nalepka Affidavit. Accordingly, MCI has provided citations to North Dakota case law and statutes. See, McCarthy v. Azure, 22 F.3d 351, 356 n. 5 (1st Cir. 1994) (a reasonable choice of law provision in a contract generally should be respected). In addition, as Massachusetts law is the same as North Dakota law for the issues raised in this motion, MCI has included citations to Massachusetts case law and statutes as well.

2

negligence or strict liability for economic loss caused by failure of a component part of the machine that causes damage to the machine only. See Cooperative Power Association, 493 N.W.2d at 667. Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." Sebago, Inc., 18 F. Supp. 2d at 89 citing Marcil v. John Deere Industrial Equipment Co., 9 Mass. App. Ct. 625, 631 (1980). In this case, as the fire to the Coach damaged only the Coach, the economic loss doctrine forecloses recovery in negligence.

In Cooperative Power, the plaintiff purchased an electric transformer from defendant. After installation of the transformer, an electrical arc in a bushing damaged the busing and contaminated the transformer coils with metal particles, requiring replacement of the bushing and rewinding of the coils. As a result, plaintiff alleged that it incurred damages that defendant refused to pay.

Plaintiff filed an action for negligence, breach of express warranty, breach of contract and negligent misrepresentation. Defendant claimed that plaintiff's sole remedy was in contract and moved for dismissal of plaintiff's tort claims. The North Dakota Supreme Court held that a manufacturer of a machine sold in a commercial transaction may not be held liable in negligence or strict liability for economic loss caused by failure of a component part of the machine that causes damage to the machine only. Id. at 667.

The product at issue in this case is the Coach. The fire on the Coach damaged only the Coach itself and resulted only in economic damages to Plaintiff. Accordingly, the economic loss doctrine bars Plaintiff's claim for negligence. Count I must be dismissed.

## II. Plaintiff's Claim For Breach Of Warranty Is Barred By The Warranty Limitation In The Purchase Agreement And The Statute Of Limitations.

The Purchase Agreement contained a limited warranty for thirty months after the Coach was delivered to Plaintiff's subrogee—until March 4, 2001. NDCC 41-02-104 provides as follows:

1. An action for breach of any contract for sale must be commenced within four years after the claim for relief has occurred. **By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.**

2. A claim for relief occurs when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made....

(Emphasis added).

As permitted by NDCC 41-02-104, the Purchase Agreement contained a limited warranty which reduced the warranty period to defects discovered thirty months after the Plaintiff took delivery of the Coach. The Purchase Agreement provided that "[f]rom the date of delivery of a new coach to an ORIGINAL Buyer, the Limited Warranty applies to defects discovery during the Warranty Term which shall be thirty (30) months." Thus, MCI's warranty period expired on March 4, 2001, over two years before the occurrence of the fire that is the basis of Plaintiff's complaint.

Notwithstanding the limited warranty contained in the Purchase Agreement, the statute of limitations for the contract for the sale of goods under North Dakota law is four years from the date of delivery of the goods. See Spieker v. Westgo, Inc., 479 N.W.2d 837, 847-48 (N.D. 1992); Bostow v. Lundell Manufacturing Company, 376 N.W.2d 20, 22 (N.D. 1985); NDCC 41-02-104-1; Massachusetts law provides for an identical four-year period. M.G.L.A. 106 § 2-725;

4

See Sebago, 18 F. Supp. 2d at 98; Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989).

In Spieker, the plaintiff was injured by an auger manufactured by defendant on October 19, 1986. Plaintiff brought an action against the defendant for, among other things, breach of warranty. The North Dakota Supreme Court held that because the action was brought more than four years after delivery of the auger, plaintiff's action was barred by the four year statute of limitations contained in NDCC 41-02-104. See Spieker 479 N.W.2d at 847-48.

In this case the Coach was purchased by Plaintiff's subrogee on April 17, 1998 and delivered to it on September 4, 1998. Therefore, the cause of action for breach of warranty began to accrue on the date of delivery, September 4, 1998, and expired on September 4, 2002. The fire on the Coach occurred on November 12, 2002, after the expiration of the four year statute of limitations. Plaintiff did not file this action until February 18, 2005, approximately two and a half years after the expiration of the statute of limitations. Accordingly, Count II must be dismissed.

### III. MCI Disclaimed The Express And Implied Warranties.

Plaintiff cannot maintain an action for breach of express or implied warranty, including warranties for merchantability and fitness for a particular purpose, as those warranties were specifically disclaimed in the Purchase Agreement. See Haugen v. Ford Motor Company, 219 N.W.2d 462 (N.D. 1974) (upholding disclaimer of warranty provisions under the UCC); NDCC 41-02-33; see also M.G.L.A. ch. 106 § 2-316 and Marcil v. John Deere Indus. Equipment Company, 9 Mass.App.Ct. 625, 430 N.E.2d 430 (1980) (upholding disclaimer of warranty provisions under the UCC). NDCC 41-02-33 provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be

construed whenever reasonable as consistent with each other." Massachusetts law is identical. M.G.L.A. ch. 106, § 2-316(1).

The Purchase Agreement entered into between Plaintiff and MCI contained a clear and conspicuous limitation of warranty. Paragraph 13 of the Provisions, Terms and Conditions of the Purchase Agreement provided:

> BUYER HEREBY EXPRESSLY ACCEPTS THE WARRANTY BELOW AS THE SOLE WARRANTY APPLICABLE TO THE COACH(ES) ORDERED HEREUNDER AND AGREES THAT SUCH WARRANTY SHALL BE IN LIEU OF ALL OTHER UNDERSTANDINGS, REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE OR USE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES OF THE SELLER IN RESPECT OF THE SAID COACH(ES) OR THE USE THEREOF BY BUYER AFTER DELIVERY.

Paragraph 15 provided in part:

> THIS WARRANTY AND SELLER'S OBLIGATION HEREUNDER IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES WITH RESPECT TO SALE OR USE OF THE COACH. NO PERSON IS AUTHORIZED TO CHANGE OR OTHERWISE MODIFY THIS WARRANTY OR ASSUME ANY OTHER LIABILITY ON BEHALF OF SELLER UNLESS SUCH CHANGE, MODIFICATION OR ASSUMPTION IS MADE IN WRITING AND SIGNED BY AN AUTHORIZE OFFICIAL OF THE SELLER.

As the Purchase Agreement specifically disclaimed all express and implied warranties, including warranties of merchantability and fitness for a particular purpose, Plaintiff is precluded from bringing an action for breach of express and/or implied warranties. Accordingly, Count II must be dismissed for this reason as well.

WHEREFORE, Defendant Motor Coach Industries, Inc. moves to dismiss Counts I and II of Plaintiff's Complaint with prejudice and for such other relief as this court deems to be equitable and just.

          MOTOR COACH INDUSTRIES, INC.
          By its Attorneys,

          /s/      David A. Barry
          David A. Barry, BBO No. 031520
          Sugarman, Rogers, Barshak & Cohen, P.C.
          101 Merrimac Street, 9th Floor
          Boston, MA 02114-4737
          (617) 227-3030

OF COUNSEL:

Mark E. Enright, Esquire
Thadford A. Felton, Esquire
Arnstein & Lehr LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
(312) 876-7100

Dated: May 13, 2005

Doc. #363022

7

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBELLA MUTAL INSURANCE COMPANY, as Subrogee of BUCKINGHAM BUS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR COACH INDUSTRIES and ESPAR HEATER SYSTEMS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF TIMOTHY J. NALEPKA

PERSONALLY BEFORE THE UNDERSIGNED NOTARY PUBLIC, duly authorized by law to administer oaths in the State of Illinois, appeared Timothy J. Nalepka, who being duly sworn deposes and states the following:

1.  I am a United States citizen over the age of eighteen (18) years, I have personal knowledge of all of the matters addressed herein, and I am competent to give this affidavit.

2.  I am Senior Vice President, General Counsel, and Secretary of Motor Coach Industries, Inc. ("MCI"), the defendant in the above-captioned matter

3.  According to the complaint, the motor coach involved in the incident that is the subject of this lawsuit bears VIN 1M8TRMPAXXPO60444 (hereinafter referred to as the "Coach") (Complaint, par. 2).

4.  On or about April 17, 1998, MCI entered into an Agreement To Purchase with Buckingham Bus Co., Inc. ("Buckingham"), pursuant to which MCI

agreed to sell and Buckingham agreed to purchase the Coach. A true and correct copy of that Agreement to Purchase is attached as Exhibit A.

5. On or about September 3, 1998, MCI issued its invoice to Buckingham for the sale of the Coach. The total price for the Coach was $371,337.00. A true and correct copy of the September 3, 1998 invoice is attached as Exhibit B.

6. Also on or about September 3, 1998, MCI issued its "Certificate of Origin for a Vehicle" for the Coach to Buckingham. A true and correct copy of the Certificate of Origin for a Vehicle dated September 3, 1998 is attached as Exhibit C.

7. On or about September 4, 1998, MCI delivered the Coach to Buckingham. A true and correct copy of the delivery record is attached hereto as Exhibit D.

The Affiant has nothing further to say.

_____
TIMOTHY J. NALEPKA

Sworn to and subscribed before me
this 6th day of May, 2005.

_____
Notary Public, State of Illinois

> OFFICIAL SEAL
> **DEBORAH LEWIS**
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 8-6-2008

**MCI**    Agreement to Purchase    

| | | | |
|---|---|---|---|
| _X_ Corporation | __ Co-partnership | __ Individual | Order Date: __04/17/98__ |
| Customer Name: | BUCKINGHAM BUS CO., INC. | | Order ID #: CTOY-3TKTFT |

Address: P.O. BOX 8, 40 STATION AVE.
City, State Zip Code: GROTON, MA 01450
Phone: ( 978 ) 448-6057
Requested Delivery Date        (ie: Month/Year 10/96)

Herein refer to as Buyer, hereby orders the coach(es) described below from Motor Coach Industries, Inc., herein referred to as Seller, to be delivered as soon as possible F.O.B. Pembina, North Dakota, which Buyer agrees to accept and pay for at the price(s) and pursuant to the terms of this order.

Ship via:
_X_  Buyer's representitive(s) to drive-away coach(es) from the factory at Pembina, North Dakota.
___  Other:
     to Buyer at:
     Street     City     State

| Quantity | Description | Unit Price (Excluding Taxes) | Total (Excluding Taxes) |
|---|---|---|---|
| 1 | 102EL3 Base Limited Edition Package | $349,020.00 | XXXXXXXXXXXX |
| | Total of All Options | $25,912.00 | XXXXXXXXXXXX |
| | Total of requested Specials | $500.00 | XXXXXXXXXXXX |
| | Total Cash Price, Excluding Federal Excise Tax. (Other Applicable Taxes are Additional) | $375,432.00 | $375,432.00 |
| | Cash Deposit with this order | | $0.00 |
| | Terms of Balance  Balance Due Prior to Coach Delivery | | |
| | Amount Due | | $375,432.00 |

The Provisions, Terms and Conditions on this and all accompanying and attached documentation are applicable to this order and by this reference form a part of this Agreement to Purchase.

Accepted By: BUCKINGHAM BUS CO., INC.
(Buyer's Individual, Corporate or Firm Name)

Date of Acceptance: 4-17-98
By: _Kim Buckingham_
    Signature

Accepted By: Motor Coach Industries, Inc.
             Seller's Name

Date of Acceptance: _____
By: _____
    Signature

EX. A

## AGREEMENT TO PURCHASE
## PROVISIONS, TERMS AND CONDITIONS

1. All prices stated herein are subject to change to conform to Seller's prices in effect at the time the motor coach(es) ordered hereunder are shipped and will be increased or decreased to equal such regular prices if Seller shall change such prices before shipment. The interest rate specified herein shall also be adjusted in the event of a general increase or decrease by Seller in the interest rate it charges its customers between the date this Agreement to Purchase is signed and the interest rate charged its customers at the time of invoicing. Seller shall give Buyer written notice of any such increase or decrease in prices, and Buyer shall have the privilege of canceling this order within ten (10) days thereafter for any increase in the sales price only. Upon such cancellation because of a sales price increase, Seller shall return Buyer's cash deposit, if any.

2. Notwithstanding the acceptance of a deposit from Buyer by or on behalf of Seller, this order shall not be binding upon the Seller until and unless a copy, signed for Seller to evidence acceptance, is returned to Buyer.

3. This Agreement to Purchase is not assignable or transferable.

4. If payment of any part of the price is deferred until after delivery, Buyer shall execute the type of security agreement to evidence and secure the amount deferred, required by Seller, using the Seller's standard form thereof. The aforesaid security agreement will require Buyer to cover said coach(es) by insurance against fire, with extended coverage, for not less than the balance of the price remaining unpaid, and against collision damage, with a maximum deductible of $1,000.00, this insurance to be obtained from companies acceptable to Seller and to be payable to both Buyer and Seller as their interests may appear. Motor Coach Industries, Inc. reserves to itself all remedies available to it under the Uniform Commercial Code as a secured party even though these remedies are not specifically set forth in this Purchase Agreement or in any subsequent Security Agreement or Conditional Sales Contract.

5. If the Buyer fails to accept or take delivery of the equipment within thirty (30) days after the date that the coach is available for delivery, the Buyer will, at the Seller's option, be obligated to pay interest on the unpaid balance commencing on the thirty-first (31st) day after the date on which the coach became available for delivery at the Seller's current rate of interest on conditional sales contracts. The Seller may, at its option, by notice in writing to the Buyer, cancel this Agreement and retain the deposit as liquidated damages and not as a penalty; or the Seller may take what other remedies that the Seller may have at law or in equity.

6. This Agreement to Purchase shall not be subject to termination by either Buyer or Seller, except in accordance with the provisions of paragraphs 1, 5, 7, and 10 hereof.

7. Seller shall be in default hereunder if it (1) shall become bankrupt, insolvent or unable to meet its financial obligations as the same materialize during the term of this Purchase Agreement, or (2) shall be unable to effectuate delivery at the time and place specified for delivery. Buyer shall be in default hereunder if it (1) shall become bankrupt, insolvent and unable to meet its financial obligations as the same materialize during the term of this Purchase Agreement, or (2) shall be unable to pay Seller the purchase price for the motor coach(es) at the time and place that its obligation to pay such purchase price arises hereunder. In the event of a default by one of the parties hereto, the non-defaulting party shall have the right to terminate this Purchase Agreement, and such termination shall not adversely affect any claims for damages available to the terminating party, it being the agreement of the parties hereto that the non-defaulting party shall have such remedies as are accorded to it under applicable law.

8. Without notice to Buyer, Seller may, at any time, make changes or improvements in the model and or design of any of said coach(es) or any part thereof, provided that such changes do not adversely affect quality, but Seller shall have no obligation to make any changes or improvements either prior to or after delivery.

9. Seller hereby warrants that it has good and marketable title to the motor coach(es) sold hereunder, free and clear of any and all liens and encumbrances, and further that it has full right and legal authority to sell such motor coach(es) to Buyer.

10. Seller shall not be liable for any damages resulting from, and Buyer shall not have the right to cancel this order because of, any delay caused in whole or in part by fires, floods, windstorms, tornadoes, wars, riots, insurrections, strikes, lockouts, sit-downs, or other labor trouble causing cessation or interruption of operations, or by accident, material shortages, labor or fuel shortages, or inability to procure labor or materials or because of Seller's plants being commandeered, in whole or in part, by any legally constituted public authority, or because of any priorities or preferences established for the manufacturing, assembly or allotment of materials by order, decree, or otherwise, of any legally constituted public authority in any plant of Seller or any of its suppliers, or resulting from any other cause, reasonably beyond the control of Seller; and Seller shall have the privilege of canceling this order if any legally constituted public authority shall establish a price for the coach(es) to be sold hereunder which is not satisfactory to Seller.

11. Risk of loss to each motor coach sold hereunder shall pass from Seller to Buyer at the time that each such motor coach is received by Buyer. Title to each motor coach sold hereunder shall likewise pass from Seller to buyer at the time that each such motor coach is received by Buyer, unless, however, either Seller shall not then have received the full and entire purchase price due for each such motor coach or Buyer shall have executed or be required to execute a security agreement of the nature described in paragraph 4 hereof, in which event said title shall be transferred from Seller to Buyer only at such time as Seller shall have received the full purchase price due for this motor coach, plus any other amounts which may be due by virtue of said Agreement to Purchase or said Security Agreement. Buyer agrees to execute a suitable document on a form approved by Seller evidencing its receipt of each motor coach sold hereunder, which document shall also specify that Buyer accepts risk of loss to (unless retained by Seller to secure payment of the purchase price or a portion thereof, as per the preceding sentence) and possession of each such motor coach delivered.

12. Buyer agrees to reimburse Seller for any tax or charge, fee or imposition, which Seller is or may be required to pay in respect of the said coach(es) or any part thereof or the sale thereof to buyer, now or hereafter imposed by any law, ordinance or decree of any federal, state or local governmental authority, unless same has already been included in the price.

13. BUYER HEREBY EXPRESSLY ACCEPTS THE WARRANTY BELOW AS THE SOLE WARRANTY APPLICABLE TO THE COACH(ES) ORDERED HEREUNDER AND AGREES THAT SUCH WARRANTY SHALL BE IN LIEU OF ALL OTHER UNDERSTANDINGS, REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE OR USE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES OF THE SELLER IN RESPECT OF THE SAID COACH(ES) OR THE USE THEREOF BY BUYER AFTER DELIVERY.

14. This Agreement to Purchase shall be construed and interpreted in accordance with the laws of the State of North Dakota, United States of America.

15. MCI COACH WARRANTY - LIMITED WARRANTY EXCLUDES TIRES AND BATTERIES

    This Warranty applies only to coaches sold for use in the territorial limits of Canada and the U.S.A., including Hawaii and Alaska, excluding Puerto Rico, Guam and the Virgin Islands. The Seller warrants for the Warranty Term herein specified that each new coach and all accessories comprising such coach, excepting tires and batteries, are free from defects in materials and workmanship.

    From the date of delivery of a new coach to an ORIGINAL Buyer, the Limited Warranty applies to defects discovered during the Warranty Term which shall be thirty (30) months.

    The Buyer shall give the Seller notice in writing of any defect occurring during the Warranty Term to which Buyer claims this Warranty applies within thirty (30) days from date such defect becomes apparent, specifying the nature of the claimed defect and the date it became apparent.

    Seller's obligation under this Warranty is limited to repairing or, at Seller's option, replacing free of charge any parts which, in the opinion of Seller, have failed as a result of defects in materials or workmanship during the Warranty Term under normal service conditions and which are returned to Seller, transportation charges prepaid, providing timely notice of such defects has been given by Buyer to Seller. Further, Seller will reimburse Buyer for costs incurred in the removal and replacement of such defective parts based on the number of man-hours designated by the Seller to be required for such work at the base rate plus twenty-five percent (+25%) for the mechanical labor prevailing at the Buyer's garage at the time of replacement. Such base rate shall have been previously approved by Seller.

    ENFORCEMENT OF THIS OBLIGATION OF SELLER SHALL BE THE SOLE AND EXCLUSIVE REMEDY OF BUYER UNDER THIS WARRANTY.

    THIS WARRANTY SHALL NOT APPLY TO ANY COACH IF, IN THE REASONABLE OPINION OF SELLER, ANY COACH OR ACCESSORIES OR EQUIPMENT COMPRISING SUCH COACH.

    (a) has been altered, modified, changed, reworked or replaced in a manner which would likely affect serviceability in any respect; or
    (b) has been subject to abuse, neglect or damage from an accident; or
    (c) has not been serviced and maintained at reasonable intervals according to recommendations of Seller; or
    (d) has been operated at speeds in excess of Seller's recommended maximum speed; or
    (e) has been the subject of the installation of replacement parts not recommended by Seller which have been substituted in such a way as to affect serviceability.

    This Warranty shall not apply to any parts or equipment which must be replaced during the warranty period as a result of what is, in the opinion of the Seller, normal wear and tear in the course of normal operations or routine maintenance of the coach, or damage due to accident.

    THIS WARRANTY AND SELLER'S OBLIGATION HEREUNDER IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES WITH RESPECT TO SALE OR USE OF THE COACH. NO PERSON IS AUTHORIZED TO CHANGE OR OTHERWISE MODIFY THIS WARRANTY OR ASSUME ANY OTHER LIABILITY ON BEHALF OF SELLER UNLESS SUCH CHANGE, MODIFICATION OR ASSUMPTION IS MADE IN WRITING AND SIGNED BY AN AUTHORIZED OFFICIAL OF THE SELLER.

16. BUYER AGREES THAT THIS ORDER CONTAINS THE ENTIRE AGREEMENT RELATING TO THE PURCHASE OF THE SAID COACH(ES) AND THAT THERE ARE NO REPRESENTATIONS OR UNDERSTANDINGS OTHER THAN THOSE EXPRESSLY SET FORTH HEREIN. THIS ORDER MAY BE CHANGED OR AMENDED ONLY BY A WRITTEN INSTRUMENT SIGNED BY THE PARTY ADVERSELY AFFECTED.

17. WARNING: This vehicle may contain HCFC R22 refrigerant, a substance which harms public health and environment by destroying ozone in the upper atmosphere.



**MOTOR COACH INDUSTRIES INC.**
552 WEST STUTSMAN AVENUE
PEMBINA, NORTH DAKOTA 58271-0349
PHONE (701) 825-6234
FAX (204) 772-0620

| INVOICE NO. | 33034 |
| --- | --- |
| PAGE | 1 |
| DATE | 09/03/98 |
| SALESMAN | HAUSMAN BUS SALES |

REGULAR INVOICE

Fed ID: 45-0277789

```
U000099      Fed ID:                          Buckingham Bus Co., Inc.
Buckingham Bus Co., Inc.                      P.O. Box 8
P.O. Box 8                                    40 Station Ave.
40 Station Ave.                               Groton MA 01450
Groton MA 01450                               USA
USA
```

| CUST. ORDER NO. | P.O. NUMBER | PKGS | PPD | WEIGHT | SHIP VIA | TERMS |
| --- | --- | --- | --- | --- | --- | --- |
| 004312 | 005-171 | | | 0.00 | | CASH |

| LINE REL | QTY ORDERED | QTY SHIPPED | QTY BACK ORDERED | UNIT PRICE | EXTENDED PRICE |
| --- | --- | --- | --- | --- | --- |
| | | | | Currency: US$ US Dollars | |
| 1 | 1.000 | 1.000 | .000 | 371,337.00000 | 371,337.00 |

Item: 102EL3-60444C
Description: BUCKINGHAM BUS CO., INC.
U/M: EA

MODEL 102EL3 MCI INTERCITY COACH IN
ACCORDANCE WITH MOTOR COACH INDUSTRIES,
INC., STANDARD SPECIFICATIONS, INCLUDING
OPTIONAL EQUIPMENT ITEMS AS PER DETAILED
PAGES ATTACHED TO AND FORMING A PART OF
AN AGREEMENT TO PURCHASE DATED
APRIL 17, 1998 LESS TIRES

$ 372,552.00

LESS: PRICE ADJUSTMENTS
AS ADVISED IN MS. L.
KACPROWSKI'S LETTER TO
MR. K. BUCKINGHAM DATED
AUGUST 19, 1998          $ (4,095.00)

ADD: TIRES               $ 2,880.00

---

**IMPORTANT-** THE TITLE AND OWNERSHIP OF PROPERTY AND THE RIGHT OF POSSESSION OF THE SAID GOODS AND EQUIPMENT SHALL REMAIN IN THE VENDOR UNTIL THE PURCHASE PRICE IS PAID IN FULL, AND THE VENDOR SHALL HAVE THE RIGHT TO REPOSSESS AND SELL THE SAID EQUIPMENT IN THE EVENT OF DEFAULT IN SUCH PAYMENT. COMPLAINTS OF SHORTAGE OR OTHERWISE MUST BE MADE TO OUR HEAD OFFICE UPON RECEIPT OF GOODS OR CLAIMS CANNOT BE CONSIDERED OR ALLOWED. PERMISSION MUST BE OBTAINED BEFORE GOODS MAY BE RETURNED FOR CREDIT.

| | |
| --- | --- |
| SUB TOTAL | |
| TRADE-IN | |
| FREIGHT | |
| SALES TAX | |
| AMOUNT DUE | |

CONTROL NO. P020765

EX. B



**MOTOR COACH INDUSTRIES INC.**
552 WEST STUTSMAN AVENUE
PEMBINA, NORTH DAKOTA 58271-0349
PHONE (701) 825-6234
FAX (204) 772-0620

| INVOICE NO. | 33034 |
|---|---|
| PAGE | 2 |
| DATE | 09/03/98 |
| SALESMAN | HAUSMAN BUS SALES |

**REGULAR INVOICE**

Fed.ID: 45-0277789

```
U000099      Fed ID:                    Buckingham Bus Co., Inc.
Buckingham Bus Co., Inc.                P.O. Box 8
P.O. Box 8                              40 Station Ave.
40 Station Ave.                         Groton MA 01450
Groton MA 01450                         USA
USA
```

| CUST ORDER NO. | P.O. NUMBER | PKGS | PPD | WEIGHT | SHIP VIA | TERMS |
|---|---|---|---|---|---|---|
| 004312 | 005-171 | | | 0.00 | | CASH |

| LINE REL | QTY ORDERED | QTY SHIPPED | QTY BACK ORDERED | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|

TRADE-IN: ONE (1) USED 1993 MCI 102C3
COACH UNIT #45160

F.O.B. PEMBINA, NORTH DAKOTA
FEDERAL EXCISE TAX EXEMPT

V.I.N.: 1M8 TRMPA X XP060444
UNIT NO.: 60444
ENG. SERIAL NO.: 06R0432040
FLEET NO.: 132

**IMPORTANT-** THE TITLE AND OWNERSHIP OF PROPERTY AND THE RIGHT OF POSSESSION OF THE SAID GOODS AND EQUIPMENT SHALL REMAIN IN THE VENDOR UNTIL THE PURCHASE PRICE IS PAID IN FULL, AND THE VENDOR SHALL HAVE THE RIGHT TO REPOSSESS AND SELL THE SAID EQUIPMENT IN THE EVENT OF DEFAULT IN SUCH PAYMENT. COMPLAINTS OF SHORTAGE OR OTHERWISE MUST BE MADE TO OUR HEAD OFFICE UPON RECEIPT OF GOODS OR CLAIMS CANNOT BE CONSIDERED OR ALLOWED. PERMISSION MUST BE OBTAINED BEFORE GOODS MAY BE RETURNED FOR CREDIT.

| | |
|---|---|
| SUB TOTAL | 371,337.00 |
| TRADE-IN | 117,896.47- |
| FREIGHT | 0.00 |
| SALES TAX | 0.00 |

CONTROL NO. P020766    Prepaid Amt: 5,000.00    **AMOUNT DUE** 248,440.53



### CERTIFICATE OF ORIGIN FOR A VEHICLE

**MCI**

DATE: September 3, 1998
INVOICE NO.: 33034

VEHICLE IDENTIFICATION NO.: 1M8 TRMPA X XP060444
YEAR: 1999
MAKE: MCI

BODY TYPE: Bus
SHIPPING WEIGHT: 38,760 lbs.

H.P. (S.A.E.): 62.9
G.V.W.R.: N/A
NO. CYLS.: 6
SERIES OR MODEL: 102EL3

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.: (Customer Direct)

Buckingham Bus Co., Inc.
P.O. Box 8, 40 Station Ave.
Groton, MA   01450

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

Subject to a lien held by
The CIT Group/Equipment
Financing, Inc.
P.O. Box 27248
Tempe, AZ   85285

**MOTOR COACH INDUSTRIES, INC.**

BY: _(signature)_
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)   (AGENT)

MC0017410

PEMBINA, NORTH DAKOTA
CITY - STATE

EX. C

**MOTOR COACH INDUSTRIES, INC.**

## RECORD OF 102EL3 COACH DELIVERY
## FROM HAUSMAN BUS SALES, INC. FACILITY

*To insure all future updates of Parts, Maintenance and Service Bulletin publications are forwarded to the customer noted below, MCI requests that the following information be completed by HBSI personnel delivering the coach to the customer noted below. The completed form should be forwarded to: Lois Kacprowski at HBSI Des Plaines.*

This will confirm that the following MCI coach was delivered to the Customer on the date indicated below. This date will indicate the start of the MCI 30 month, unlimited mileage Limited Warranty in accordance with the terms and conditions of this Limited Warranty as published in the Owner Warranty Manual supplied with the coach at the time of delivery.

| | |
|---|---|
| Vehicle Identification Number (VIN) | 1M8 TRMPA X XP060444 |
| Mileage at time of delivery | 825 |
| Delivery date | 9/4/98 |
| | |
| Customer Name | Buckingham Bus Co. Inc. |
| Customer Contact and Title | Mr. Kim Buckingham, President |
| Shipping Address | 40 Station Avenue |
| Mailing Address | P.O. Box 8 |
| City, State, Zip Code | Groton, MA 01450 |
| Telephone Number | 978-448-6057 |
| | |
| Location of Delivery | Hausman - Des Plaines |
| | |
| Signature of Customer Representative | *Kim Buckingham* |
| Signature of HBSI Representative | *Lois Kacprowski* |

Ex. D